The next case is Number 14-15-16, Synopsys, Inc. v. Mentor Graphics Corporation. Mr. Chomsky. Proceed. Good morning, Your Honors, and may it please the Court. I'm Eric Chomsky, also representing Synopsys here this morning. I'd like to try and focus principally on the anticipation argument. Before you go into that, I want to be clear. Your colleague said that in this case you are only challenging the final written decision and not the decision to institute. Is that correct? That is correct, Your Honor. Okay. Let me make sure that I respond to what I hear to be the concern animating the question. Your Honor asked a series of questions about the adequacy of relief and whether relief in the second case, in this case, would mean that there wouldn't be APA review available. And my answer is the same one that I heard my colleague, Mr. Loeb, to be giving, which is the following. Our challenge is to the final written decision. To the extent the Court simply spoke to Section 318 and Section 319, then there might well be something left over that would need to be decided in the APA case. If, conversely, and this was the last part of what Mr. Loeb was saying, the Court in interpreting Section 318, the scope of this Court's jurisdiction under 319, went on to look at the regulation, for instance. Why would we do that if it's only an issue about the final written decision rather than an issue about institution? Well, I'll leave this to the other side. The reason the Court might do that, for instance, is that that's what the other side has advocated. The government has said, in order to understand Section 318, you need to look at our regulation. So they have said the two horizons fall together. But is your position that even if the PTO has the discretion not to institute review with respect to all of the claims, that the final written decision has to address all of the claims, even though there was no institution decision with respect to some of the claims? No, Your Honor. Our argument has been that the two of them go together. Well, then it sounds as though you're challenging the institution decision. So let me respond in the following fashion. Yes, we say that the regulation is invalid because the two need to go together. The fact that they go together doesn't mean any less that we are challenging the final written decision under Section 318. We think that the final written decision here was defective for all of the reasons that Mr. Loeb was saying, and we think that we have a valid appeal under Section 319. Are you saying that you can challenge the institution decision by challenging the final written decision? I mean, there is an aspect of that that goes with it, Your Honor, but that doesn't divest the court of jurisdiction. Wait, wait, wait. What's the answer to my question? Are you saying that you can challenge the institution decision by challenging the final decision? I'm resisting only because I think that the framing of the question builds a big premise, and the challenge here is to the final written decision. The final written decision doesn't have everything that it needs to in it, and that's all we need to establish appellate jurisdiction under Section 319. Now, we have said, and we've said in the APA case, that we think that as a result of Section… Do you agree that you cannot address the institution decision and allege defects in it by challenging the final written decision? So phrased, Your Honor, no, I don't agree with that. The final written decision has to contain certain things. Section 318 says what those are. Section 319 then confers on this court appellate jurisdiction to review in a circumstance where a party is dissatisfied with the final written decision. And that's exactly what Closo said. You can't challenge the final written decision based on what happened at institution. Absolutely, Your Honor, and Acades says the same thing, too, and we agree with that. The difference here is that the final written decision has the signal defect. In Acades, and obviously there's an aspect of this in the cross appeal, in Acades or in Closo, someone's trying to double dip. They're trying to get something that is about the stuff of institution and challenge it in the final written decision on the theory in Closo that it was interlocutory or on the theory in Acades that it had been addressed again. We agree with both of those cases. The absolutely critical distinction here is that it's the final written decision that's erroneous, and the reason the final written decision is the key is for the same reasons Mr. Loeb was saying, because of the need for estoppel, because of the problem with stays, for the integrity of the system as a whole, for the reason you were saying, Judge Newman, precisely because of what Congress intended with the overall scheme. Do I remember correctly, in the institution decision, the examiner or whoever issued it didn't say, we're not going to review all the claims. I thought that that didn't appear until the final decision. Is that correct? I'm not sure that's right, Your Honor. I don't remember exactly. I believe the institution decision did, as is the custom of the office, only address certain of the claims. But I don't believe it said we're not going to address all the claims. I'm not sure, Your Honor. I think it may not have specifically gone the extra step and said we're not going to. If it didn't, then this debate about what's in the institution decision perhaps is not significant. If they didn't say, yes, but there are a few claims here that we're not going to address, they remain outside of the potential estoppel. I don't remember that in the institution decision. I thought they just said that we're going to take the case because you've shown that at least one claim, whatever the statute requires. They said in the institution decision we're not instituting review as to some of these claims, right? I don't remember. They had to have said that. I confess I'm happy to look and bring the court a citation. I don't remember the precise wording of that. I do want to save a bit of time at least to talk about the substantive anticipation decision itself, but don't want to artificially cut short this part of the discussion. I understand this is an important and novel question, and the court obviously has had a number of questions about it. Go ahead to the merits. Thank you, Your Honor. So on the anticipation question, we think that there is a simple and straightforward basis to vacate and remand under fundamental principles of administrative law, and that's the simple fact that the board failed to address an argument that was made, and that was anticipation in light of Figures 16 and 18 and the accompanying disclosure. And I think it is notable that as we come to the- Yes, Your Honor. Figures 16 and 18 were all over the petition. They were specifically raised at A181. They were further discussed at A149-150. Did you have an expert who explained why those anticipated? No, Your Honor, but that's a separate question. The only argument that's been made- But you're asking us to examine this very complicated patent and decide that it's anticipatory without the benefit of any expert testimony. Well, so as the case comes to the court, the only question is whether the board improperly failed to address an argument that was made to it, and that's a sufficient basis under Motor Vehicle Manufacturers Association and the long line of Supreme Court authority to vacate and remand. So I would, Judge Dike, I want to make sure to finish responding to your question about whether we raised it because I do want to make sure the court understands the full extent to which these figures were dealt with. So it's not only just in the petition where I indicated, it was also raised at the oral hearing at A812 and A13. A slide was given to the board, to the panel, that addressed this specific question. That's at A781. In fact, the other side was asked a question about this. I've noticed that we left that page out of the compiled appendix we submitted to the court, but that's at A832, and the board itself said that we submitted what they called at A69, a detailed claim chart. So the issue was before the board, and it suffices to vacate and remand that the board simply failed to address the question. Here's a merits question. Measure says in the thread brief that you conflate functional debugging addressed by 376 with Gregory's physical constraint debugging. If, as they assert, the functional simulation in Gregory is carried out at the HDL level, which is pre-synthesis, rather than at the GATE level, which is post-synthesis, which is what's in the 376, how is the disclosure of Gregory sufficient to render claims 1 and 28-376 invalid? So let me answer that in a couple or maybe even three different ways, Judge Wallach. First of all, the board made no such finding. Of course, as Your Honor knows, on review of an agency decision, the court can only affirm on a basis found by the agency. The agency didn't find that, and indeed directly to the contrary, the board invalidated or held unpatentable claims 5, 8, and 9, which strongly indicates that it believed the contrary to be true. So that's the first answer. Second, had the board so held under cases like American CalCAR, it would have been legally erroneous. The particular implementation or application of a reference doesn't render it anticipatory or not. And the final answer, which we think that the court can't and shouldn't even get to, is that we actually just disagree with that. We think the disclosure of Gregory at columns 1 and 2 and then subsequently in column 11 actually does indeed talk about functional testing, but that's really, as I say, sort of three or four layers down before the court would even get to that. Now all of that, of course, is far into the merits, and we think that the threshold question about the board's failure to address Figures 16 and 18 really is enough to vacate and remand and send this back to the board for further consideration of that issue. Okay. We can hear from the other side and save you a little time. Thank you, Your Honor. Okay. Mr. Miller. Good morning. May it please the court, Mark Miller representing Mentor Graphics. To answer the court's question about the decision to institute, at Appendix A40 the board did state that the petition is denied as to certain claims. So there was a denial as to claims in the decision whether to institute or not. Now I would also like to focus in on the merits, on the anticipation issue. Okay. Thank you. Before you do that, could I just be clear what's left of your cross appeal? Do you agree that Achates bars your argument with respect to privity and real party interest? Your Honor, we agree that if Achates binds this court, which it does, then our appeal under 315B is decided under that case. Okay. And what about Microsoft and the motion for leave to amend? Does the Microsoft case resolve the motion for leave to amend contentions? I believe you're referring to Microsoft versus ProxyCon. Your Honor, we do not believe that that case addresses the portion of the EIDL3 standard that requires the patentee to demonstrate patentability over all prior art known to the patent owner. So we do not believe that Microsoft is dispositive on the motion to amend issue. Okay. Now on the merits of the anticipation issue, we believe that the board correctly found that synopsis did not show that Gregory's temp out signal satisfies the execution status limitation in claims 1 and 28. This was supported by Dr. Sarasate's declaration, which the board termed persuasive. And the board went beyond the expressed language and found, looking beyond the expressed language, and found that synopsis did not point to any disclosure in Gregory that analysis information includes execution status. Now this is important because it addresses the issue that Mr. Shumsky made about the claim 5 limitation, claim 5 comparison. The important point there is that synopsis had arguments about figures 16 and 18 with respect to different claims, not with respect to claims 1 and 28. There's one sentence in the claim chart at page 181 that Mr. Shumsky referred to regarding execution status that does nothing more than refer to the claim language uses the word execution status and figures 16 and 18. I apologize. That section does not use the words execution status. That portion of the claim chart simply refers to the figures. There's no explanation of how those figures operate to provide execution status. So your argument is they didn't raise 16 and 18? That is correct. To the extent that they did raise them, they didn't present a sufficient argument to carry their burden before the board. Simply citing those figures in the claim chart is insufficient to carry their burden, which they have during the IPR. But if we agree with respect to anticipation, you still have the more difficult question with respect to obviousness, do you not? No, the board did not consider obviousness, Your Honor. The only question before the patent trial and appeal board was anticipation in view of Gregory. Addressing Judge Wallach's question regarding functional simulation versus physical constraint debugging, that we think is the answer to this issue on anticipation because in Gregory, the only functional simulation that's performed relates to the RTL. The claim calls for providing execution status using the netlist. In this case, Gregory fails to disclose any functional simulation using the netlist, and the board recognized that decision, saying that the analysis information that is in Gregory doesn't disclose execution status. At page A73, the board said, in fact, when Gregory discusses analysis, it generally refers to characteristics of the circuit, such as timing and power, which are not related to execution status as we have construed that term. So you have Gregory that performs some functional simulation only on the code, only on the source code, either HDL or RTL. That's shown in Figures 1 and Figures 3 of Gregory. That's at 1105 and 1107 in the appendix. There's no functional simulation in Gregory with respect to the netlist, and it is the instrumentation signal in the netlist that must provide execution status. What Gregory does talk about in the context of the netlist are physical constraints such as timing and power. Those are very different than execution status. The board found that there was a difference and considered that issue when making its decision. I want to be sure that I understand your argument. You're saying obviousness was never argued or just that it wasn't decided? The IPR was not instituted on obviousness. It was the only issue before the board. All that you need in institution is the general statement that more likely than not there is one claim of this entire group, which on the preponderance standard is invalid. So now I'm looking at the entirety of the proceedings leading to the final decision, which is before us for review. In this case, the board granted inter-parties review only on the question of whether Gregory anticipated... You're saying that the entire board proceeding is restricted by what is  instituted? Yes, Your Honor. That is what the board instituted on a particular basis for invalidity, in this case anticipation. And that was what was before the board. That's not in the statute. So you say that this is the correct implementation of the statute? Yes, we do. In fact, in the petition, the petitioner had to set forth each ground on which they would ask the board to institute an IPR. In this case, the only ground on which the board instituted was anticipation. I'm talking about the grounds that were set forth, not the grounds that were granted. And then the grounds that were granted was only anticipation, yes. Okay. So that's another distinction then that you feel is required by the statute? Your Honor, I don't believe that we've addressed that, but that would be consistent with the interpretation of the statute and the regulation that the board can institute on certain grounds and not on other grounds. So it would be consistent to institute only on grounds of anticipation. I thought I heard you say that it wasn't a question of the grounds that it was asked to be implemented on, but the grounds on which the board decided in its final decision are the only grounds before us. I'm sorry, I was hearing your question. I don't want to put words in your mouth, but there is a distinction. I was hearing your question to relate to the initial determination as to whether an IPR would be instituted. But I did not understand your question to relate to the final written decision, and in that case, the final written decision only addresses anticipation, and that should be the only issue before this court. Even if other grounds were pleaded? Even if other grounds were set forth in the petition, but an IPR was not instituted on those grounds, yes. Okay. So just to go back to the issue on anticipation, the arguments were not set forth in the brief, and I'd like to point out that with respect to the distinction between Claims 5, where Synopsys did present more argument about Figures 16 and 18, and Claims 1 and 28, those claims are different because Claim 5 does not have the execution status limitation. So arguments with respect to Claim 5 were not necessarily relevant to Claims 1 and 28, which have the execution status limitation. Synopsys relies heavily on the QI Press case, but in that case, the court was dealing with what were termed nearly identical claims. As I said, in this case, the distinction between Claims 1 and 28, on one hand, and Claim 5 on the other, is that the execution status limitation does not appear in Claim 5. So another point that I believe is important with regard to the discussion about Gregory in terms of demonstrating execution status is that Synopsys does not indicate where in Gregory the conditions that they rely on in their brief are set forth. So the circuit in Gregory is part of a much larger circuit. Synopsys agrees with that. It's the much larger circuit that has to provide input to the circuits that they talk about in Gregory. Without those inputs and the conditions to know what happens within the circuits that are cited, there's no way to determine execution status. And Dr. Sirafzadeh has addressed those issues. Now, even if the circuits that Synopsys presents, that have a temp-out signal, which is something that is artificially added to preserve a particular portion of the circuit during optimization, those temp-out signals would be removed if the circuits in the figures cited by Synopsys were subject to functional simulation. Functional simulation would not operate on those signals. They would be removed because they're redundant. The temp-out signal simply connects back to itself as temp-in. That signal wouldn't be used as part of functional simulation. And that makes sense because in Gregory, as I said before, functional simulation is performed only on the source code and not with respect to the net list. And again, it's the net list that appears in the claim. Now, I would offer the court one other contingent motion that we have to amend, one other contingency, which is that in the district court, the district court has entered a permanent injunction based on Claims 1 and 28. Claim 5 was not an issue in the district court. If this court upholds the validity of Claims 1 and 28, Menro Graphics would not push its motion to amend issues with respect to Claim 5. Those issues might be relevant in the event that Claims 1 and 28 are remanded and we need to consider the contingent motion to amend before the board. Thank you. Thank you. Thank you, Mr. Miller. Mr. Wyden. Thank you, Judge Newman. It may please the court. I'd like to start, if I may, with a very brief response about the motion to amend. We think that this case is governed by Microsoft E-Proxicon. Just as in Microsoft E-Proxicon, the board here found that on the prior art of record in the proceeding, the amended claims were not patentable and that Menro Graphics had failed to carry its burden on that. That's what Microsoft E-Proxicon said was sufficient and there's no need to reach the Idle Free issue in this case. Is the position of the office that a motion to amend are, as you say in your brief, a patent owner has a statutory right to an amendment? The patent owner has a statutory right to file what is deemed what is called a motion to amend. Yes, he said to file at least one motion to amend. Correct. Do they have a right to have the motion granted? No, you don't. Or only the right to file it? Only the right to file a motion. You don't file a motion, can't you? I mean, is that something that has to be decided by statute? So the position of the office is that there is no right to amend a claim, even a narrowing amendment, which you can file an amendment. The position of the USPTO is that the patent owner can file what is called a motion to amend in the statute. And because of that language in the statute, that it's a motion to amend, the board places the burden on the patent owner to prove the patentability of the claim. If the patentability of the claim is proven by the patent owner, then that amendment will be granted and it will become the claim in an issue. But by statute, it must be a narrowing amendment. Yes. So if the patentability of the claim that is being narrowed is not at issue, is there more that's needed? Well, here the petitioner was able to show that the amended claim was still anticipated by Gregory, the prior art of reference at issue for the unamended claim. Okay, but the motion was not granted, is that right? That's right. It was not granted because the board determined that the claim is not patentable. I thought it was not granted because of an inadequacy of separate evidence of patentability. You're saying it was not granted on the merits? Yes. The board had alternative grounds for denying the motion. But how could it be considered if it wasn't allowed to be entered? The board considered the merits of the motion and it said, in considering the merits, it said that the patent owner had to come forward and carry its burden of showing patentability. Separate patentability, even if or when the claim which is being amended is not being challenged on whatever the ground of amendment is? It was, in fact, in this case, challenged on the same ground that the original claim was challenged on. Well, all the claims that were accepted, at least, were challenged, isn't that right? Yes. For patentability on one basis or another. They were all challenged for anticipation on Gregory alone. That was the only issue on which the board instituted the IPR. And the amended claims that Mentor sought to add to its patent were also rejected for anticipation by Gregory. Okay. So there is no right to amend? No, Your Honor. Okay. There's a right to file a motion but not to amend. If I could turn now to the synopsis of the appeal, I'd like to go into a little bit more detail of what my friend from Mentor was saying. At page 840, the board institution decision sets forth the scope of the inter partes review. It says, it is ordered that the petition is granted as to Claims 1-9, 11, 28, and 29 of the patent. It is further ordered that the petition is denied as to Claims 10, 12-15, 20-27, and 30-33 of the patent. Skipping a paragraph, it says, it is further ordered that the trial is limited to anticipation by Gregory and no other grounds are authorized. And moving forward... And they extensively discuss why they're not going to... Exactly. That's just the final, the end of the decision, but they extensively discuss why they are not instituting. And at A576, in synopsis's petitioner response to the patent owner reply, I'm sorry, the petitioner reply to the patent owner response says that it is seeking to have the... It only asks that the board invalidate Claims 1-9, 11, 28, and 29 of the 376 patent as anticipated by Gregory. That's at page A576. So that was the ground that were being challenged by the petitioner at the time of the oral hearing, which is the critical time in inter partes review where all parties have put forward their evidence and arguments and oral hearing is presented to the board. Under the APA, all parties need to know what the issues that are being challenged during the review are at that hearing. How can that be squared with the entire way that this dramatic new structure was promoted and that is that the experts in the office will decide validity. And now we have one retrenchment after another, one withdrawal, one restriction that no litigation can continue after all because we're only going to decide this or that. Whereas the entire operation was supposed to have expert decision of the issues of validity. It is supposed to have the experts address the issues of validity on which the agency institutes inter partes review. But the challenger has to raise any issue that could or should have been raised. It isn't that they can pick and choose and put in their pocket, never mind, we'll go back and get another trial in court. Well, the estoppel provision, I believe all parties here agree that the estoppel provision does not stop the proceeding going forward on any ground that the board did not institute. On the grounds of the regulation which says that you don't have to decide all the issues. That's correct. Whereas if that regulation, that's the APA issue, isn't it, as to whether the statute means that you must decide all the issues that are presented. Well, the statute says that the final written decision must address all issues challenged, by all grounds challenged by the petitioner. And the critical time... And all claims challenged. The critical time where claims are challenged by the petitioner in an inter partes review is as of the time of the oral hearing. So any claims that the parties have settled on and the board does not choose to go forward with under section 317 of the statute, there's no need for the agency to address claims that have been dropped from the... But we are told here that there were a few claims that were included in the group that were challenged and the office said we're not going to decide them. That's not the case, Your Honor. The office declined to decide the claims on which it declined to institute inter partes review because it determined that synopsis had not carried its burden under section 314. I have broadened my question to the decision to institute. That if you institute on one claim, you can say we're not going to institute on other claims, go back to the district court and have your trial on those other claims. That's right. And how then, and this is really what troubles me, how can we square that with a basic philosophy that validity will be decided now finally with estoppel by the experts in the office? Well, anything that is decided by the office in inter partes review does result in streamlining of the district court litigation. It's streamlining elimination. There's an estoppel if it's decided. Either way, if the claims are sustained, that's it. They're valid. And if they're not sustained, that's it. They're invalid. And of course, if there's nothing left, there's nothing left in the district court. But if there are claims that are validated, you proceed with the infringement. Well, there often will be something left in the district court, Your Honor, and I can give two examples. One example is where there is an allegation of invalidity under section 101 or section 112, something that the agency cannot consider in an inter partes review. Or for the same, for that matter, art under the on sale bar, something the agency cannot consider. It's also quite possible that a missionary If it's invalidated under 102 or 103, then you can't go back and say, however, it's valid under 112. So the patentee is out of court. Isn't that right? Isn't that the idea? Correct. If it is invalidated under any provision, the patent owner is out of court. But if it is found patentable over the art of record, the petitioner can still raise a section 101 ground or a section 112 ground. And there's no requirement in the statute that the petitioner challenge every claim at issue in the district court. The petitioner can challenge a subset of claims in an inter partes review, and all the remaining claims would move forward in the district court, regardless of the inter partes review. What concerns me is that what looked on its face like an extraordinarily salutary development in reviving and revitalizing this patent system for the nation is instead being interpreted in such a way that it's worse than it was before. In which case, I suppose, the statute will be repealed. Well, I respectfully submit that it is not worse than it was before, Your Honor. And I think that the parties to these proceedings have shown that they are happy with the way the board is approaching it. We have many, many petitions being filed. It seems like petitioners are happy with the way we're approaching it. And I want to make clear that Congress not only wanted the USPTO to replace aspects of district court proceedings, it also was abundantly clear that it was concerned about the agency's ability to handle these proceedings. But if you're telling us that the agency can't handle it, maybe you should tell that to Congress. We're not saying that the agency can't handle it. We're saying that Congress gave us the tools to arrange our affairs such that we could limit the number of inter partes reviews. We believe that section 42.108 of the regulations is fully permitted by the statute. And we think that the agency is allowed to go forward on a subset of issues, streamline the proceedings as it sees fit, address the issues that it thinks it can handle in one year, and resolve those issues. I see I'm well past my time. This patentee then goes back to the district court and has another trial, and it's just a few years, a couple of years behind the previous schedule, and additional expense, and doesn't have the resolution that was the plainly stated legislative purpose. Well, perhaps my friend from Synopsys will be able to answer this question better than I, but my understanding is that the district court litigation... Well, I'm looking at the patent notice, the PTO's regulation that is at the heart of the debate today, is it not? That's correct, but my understanding is that in this particular case, the district court litigation is already complete, so there is no, there will not be an ongoing... Well, you mean the APA or the district court is going on and hasn't stayed the litigation? Perhaps that was the fairest and most just thing to do in view of the way it's being implemented. Well, the district courts aren't able to make a decision whether or not to stay. Many district courts are staying proceedings. Other district courts are not, as they see the equities sit, and the agency is moving forward with what it thinks it can handle in these proceedings in one year, and satisfied Congress's intent to have us address the issues that we think we can address within one year in these proceedings. Okay, well, thank you for presenting the views of the director. Thank you. Mr. Shumsky? Thank you, Your Honor. I'd like to make just one point, or perhaps two, about each of the three issues that I hear is remaining in the case, now that I understand privity to be conceded, and taking them in the order that they were raised. First, Judge Dyke, on the question about the motion to amend, we do agree with the solicitor's office that ProxyCon is controlling here. There were three alternative bases for the board's decision, and one of them doesn't even require the establishment of the burden. The board credited Dr. Hutchings. The second relies on the ProxyCon, or relies on the burden as established in ProxyCon, and either of those is ample to affirm that aspect of the board's decision. Second, on the question about anticipation, I heard my friend on the other side just say, and this is the same thing they said in their red brief, that with regard to Figures 16 and 18, we didn't make a sufficient argument. I think there are two points to be made about that. First of all, we did, for all of the reasons that I mentioned earlier. The point was made over and over and over, and not just at A181, but moreover, as a matter of administrative law, that really is something for the board to address in the first instance. If a point is made, but the argument is that it wasn't sufficiently made under cases like VIZIO versus ITC, that's something for the agency to sort out in the first instance. Judge Wallach, the question arose again about functional constraints, and I've answered that question to your honor already. We think that the board didn't make a finding on that, or certainly didn't and couldn't have made a finding on it with regard to Figures 16 and 18, and in any event is wrong for the reasons I was indicating. And finally, Judge Newman, my friends on the other side are absolutely correct about what the record says at A40. The board did say quite clearly, we are instituting on some things and we are not going to go ahead with institution or with a final written decision on others, and the problems are exactly the ones that your honor has pointed to. We have this partial system now where district courts, as SAS explained in its amicus brief, are deciding to go ahead with litigation, and so we have, instead of what should be a simple choice of forum or election of remedies, we have the worst of all worlds in which things are going ahead on both tracks, with lengthy and expensive district court litigation at the same time as some of the same patents are being challenged between the same parties in the district court. And so the answer on that is the one that we've explained. In both of the cases, we think that the board has simply misapprehended the congressional scheme and would ask the court to speak to that in one or the other of these appeals. And so just to, if the court has no questions, to be clear about the relief that we're seeking, we believe that the court should vacate and remand on the question of anticipation, should hold that the board has erred, and remand for issuance of a decision that complies with Section 318, and then as to mentors cross-appeal issues, affirm as to privity in the motion to amend. Thank you, your honors. Thank you. Thank you all. The case is taken under submission.